UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ARMENTA,<br>Plaintiff,<br>v.<br>CONNIE GIPSON, et al.,<br>Defendants. | No. 2:22-cv-0737-WBS-EFB (PC)<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. This case proceeds on plaintiff's first amended complaint (FAC) alleging Eighth Amendment claims related to his ongoing housing in special needs yards[1] (SNYs) after he has dropped out of a SNY gang. ECF No. 18. Plaintiff has filed motions regarding his renewed requests for a protective order and a temporary restraining order (TRO), to proceed using a pseudonym and/or to restrict public access to case filings, for issuance of subpoenas, and for library access and appointment of counsel. Defendants have filed a motion for summary judgment, and plaintiff asks for leave to file a sur-reply to the motion.

////

////

[1] Defendants alternatively use the term "Sensitive Needs Yard." ECF No. 145 at 1.

For the reasons set forth below, the court denies plaintiff's motions for a protective order, for pseudonym use and restrictions on public access, for library access and appointment of counsel, his requests for subpoenas, and his request to file a sur-reply. The court recommends that plaintiff's motion for a TRO be denied and that defendants' motion for summary judgment be granted in part and denied in part.

**BACKGROUND**

Plaintiff alleges his housing placement in a SNY together with members of the gang that he no longer belongs to (the "Independent Riders") puts him at risk of retaliation from his former gang. *See* ECF No. 18. After plaintiff dropped out of a SNY gang in January of 2017 he was housed in SNYs at California State Prison Los Angeles County (CSP-LAC), High Desert State Prison (HDSP), and California Medical Facility (CMF), where he allegedly faced retaliation and threats of retaliation from gang members. Plaintiff was moved to the Richard J. Donovan Correctional Facility (RJDCF) in about March 2025. *See* ECF No. 128.

He alleges a system-wide failure within the California Department of Corrections and Rehabilitation (CDCR) to house former gang members in a manner that adequately protects them from retaliation, and he sues Connie Gipson as the (retired) Director of CDCR for maintaining these policies. *Id*. at 3-4. His Eighth Amendment deliberate indifference claims are based on his allegations he raised his concerns about his housing placements at various times with defendants in their various roles as wardens, correctional officers, and correctional counselors. *Id*.

**PLAINTIFF'S RENEWED MOTIONS**

Shortly after his move to RJDCF, plaintiff filed two motions to seal this case and/or for a protective order limiting public access to pleadings, alleging he had "received threats by inmates, due to this case." ECF No. 127; ECF No. 129. The court ordered defendants to respond and then denied plaintiff's motions. ECF No. 134; ECF No. 135; ECF No.135-1; ECF No. 137; ECF No. 138; ECF No. 139. The court found that confidential information submitted for *in camera* review "conclusively refute[d] plaintiff's insistence that he was placed in administrative segregation because of threats from other inmates who had used their tablets to access pleadings filed in this case." ECF No. 139 at 2.

Plaintiff has filed three additional motions that renew his requests to use a pseudonym and/or for a protective order limiting public access to pleadings filed in this case. ECF No. 143; ECF No. 154; ECF No. 160. He asserts similar reasons for these motions. For example, he states that he "has been targeted by the whole population, called a snitch, rapist" due to other inmates accessing pleadings on their tablets. ECF No. 149 at 2. He claims to have received several death threats, *id*. at 9, and that he "was going to be stabbed, but the inmate got caught with the weapon." ECF No. 151 at 2. He argues that other inmates should not have access to information about his having been the victim of sexual assault. ECF No. 154 at 2. He maintains he is unable to go to the law library because he fears "being assaulted by the population on A-Yard."[2] *Id*. at 3. He alleges he is unable to safely program due to systemic safety concerns. ECF No. 163 at 2.

Rule 5.2 of the Federal Rules of Civil Procedure provides that "for good cause" the court may require redaction of information from pleadings or may limit or prohibit a nonparty's remote electronic access to pleadings. The good cause standard requires "the party seeking redaction [to] show that 'specific harm or prejudice will result' if the protective order is not granted." *Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025) (quoting *In re Roman Catholic Archbishop of Portland in Or*., 661 F.3d 417, 424 (9th Cir. 2011)). There is a presumption of public access to court records and that parties are to be identified by their true names. *Students for Fair Admissions v. Trs. Of Est. of Bishop*, 351 F.R.D. 241, 245 (D. Hawaii 2026). The presumption "is not taken lightly" and is only overcome if a balancing test of five factors shows that specific circumstances warrant such relief. *Id*. (citing *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("*Doe II*")). These factors are: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest. *Doe II*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1069 (cleaned up)).

[2] This allegation is implicitly contradicted by plaintiff's motion in which he claims that his housing placement in "Building 7" at RJDCF does not allow him physical access to a "proper law library," implying that fear is not prohibiting his library use, at least while he is housed in Building 7. ECF No. 161 at 1. As discussed below, plaintiff asks in that motion to be issued a tablet allowing him to access the law library electronically.

Defendants point out that plaintiff is repeating arguments that the court already rejected. They maintain that plaintiff does not present new factual allegations but merely makes generalized statements and fails to show his concerns for his safety are objectively reasonable. Defendants argue that plaintiff has voluntarily and repeatedly disclosed information in his pleadings that he now seeks to remove from the public record and that allowing pseudonym use or removing pleadings from the public record will not remedy these disclosures. They further point out that prison officials have responded to and investigated plaintiff's safety concerns and argue that the public interest strongly favors access to court records. ECF No. 145 at 3-4; ECF No. 156 at 3-5; ECF No. 166. Defendants submit a Classification Committee Chrono which shows that plaintiff reported a risk to his safety on November 9, 2025, and he was placed in restrictive housing at RJDCF while his report was investigated. He was returned to his housing unit on December 11, 2025 after a finding of no particularized risk to his safety. ECF No. 145-1 at 2 ¶ 2 (declaration of V. McSee). Plaintiff was again placed into restrictive housing on December 18, 2025 after he self-reported the same safety concern. *Id*. ¶ 3.

Plaintiff does not show any new or sufficient substantive reasons for the court to re-visit questions of pseudonym use and/or restricting public access to pleadings and he does not show the *Doe II* balancing test supports his requests. He has not supported his conclusory allegations of heightened risks to his safety due to the court records that are accessible to the public and he has not shown that his fears are objectively reasonable. The record indicates that prison officials have investigated his reports of safety concerns and have moved him into restricted housing while they investigate. "Requiring a party to be identified by true name also generally protects the opposing party from prejudice." *Students for Fair Admission*, 351 F.R.D. at 245 (citing *Advanced Textile*, 214 F.3d at 1068)). And the public interest is usually that "the business of the Court is done in the public eye absent good cause for restricted access." *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1242 (D. Colo. 2025), *appeal filed*, No. 26-1027 (10th Cir. Jan. 26, 2026).

For all these reasons, the court will deny plaintiff's three renewed motions requesting to be identified by a pseudonym and/or for a protective order limiting public access to the pleadings and/or information contained in the pleadings in this case.

**PLAINTIFF'S REQUEST FOR TRO REGARDING HIS HOUSING**

Plaintiff has made a separate request for a temporary restraining order (TRO) regarding his housing assignment. His request is embedded in one of his motions for a protective order, discussed above. ECF No. 143 at 3. The TRO request in that motion seeks to prohibit defendants from transferring him from RJDCF into a SNY or a general population yard. *Id*. at 3-7. Defendants' response argued that his TRO request was moot because there were no plans to transfer him. ECF No. 145; ECF No. 145-1 at ¶ 5. Plaintiff was given a classification review on December 11, 2025 (the same day his motion was filed), where it was determined that his safety was not at risk. ECF No. 145 at 2; ECF No. 145-1 at ¶ 2. According to the documentation submitted by defendants, prison officials "conducted a comprehensive investigation" into plaintiff's claims of an immediate safety threat and found them to be unsubstantiated.[3] ECF No. 145-2 at 5.

Prisoners have no constitutional right to be housed in their preferred prison facility or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). Plaintiff has not shown any sufficient reason for a TRO to prohibit any prospective prison transfer, and the undersigned recommends denial of plaintiff's request.

**PLAINTIFF'S REQUESTS FOR SUBPOENAS**

Plaintiff has filed three requests for subpoenas. ECF No. 158; ECF No. 159; ECF No. 167. All three cite Rule 45 of the Federal Rules of Civil Procedure and seek to have the names of inmates who were housed in Corcoran State Prison, 4A Yard temporary housing unit, between February 2017 and January 2023. Plaintiff claims that the names are "crucial to his case, to prove that no policy exists for SNY inmates who drop-out of a prison gang." ECF No. 158 at 1; *see also* ECF No. 159 at 2; ECF No. 167 at 2. He states he was unable to obtain the names in

[3] It appears from this record that plaintiff was subsequently transferred to Centinela State Prison (CSP) on February 16, 2026, and then returned to RJDCF on May 27, 2026. ECF No. 165 at 2; *see* ECF No. 155 (docket entry dated 2/23/26 changing plaintiff's address); *see also* Un-numbered docket entry following ECF No. 161 (giving notice of plaintiff's change of address and indicating he has returned to RJDCF as of 6/17/26). Plaintiff continued to file pleadings and litigate this case during his stay at Centinela and after his return to RJDCF.

discovery. ECF No. 158 at 2; ECF No. 159 at 2; ECF No. 167 at 2. He claims that the unit in question houses inmates who have dropped out of prison gangs. ECF No. 167 at 2.

Defendants have not filed any response to these requests. The court infers from plaintiff's argument that defendants may have objected to providing the names in response to plaintiff's discovery requests. An objection to production of names of prisoners who have left gangs might plausibly be sustained. The court cannot make this determination without a fully developed record, but the court need not address this issue because the deadline for filing motions to compel discovery was February 28, 2025. ECF No. 125 at 4. Plaintiff cannot circumvent the deadlines for resolving his discovery disputes by requesting a subpoena for disputed records. The court will deny plaintiff's subpoena requests for this reason, and for the separate and independent reason that the information plaintiff seeks to subpoena will not preclude entry of summary judgment in favor of most defendants on the grounds discussed below. *See* Fed. R. Civ. P. 56(d)(2) (court may defer ruling on summary judgment motion to allow opponent time to take discovery); *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (affirming denial of request to reopen discovery because the request would not preclude entry of summary judgment). As to the defendants for which summary judgment is appropriate, plaintiff has not shown that the information he seeks to subpoena would demonstrate a genuine dispute of material fact what would preclude entry of summary judgment. To the extent that plaintiff's claims against some or all defendants may survive summary judgment, plaintiff also has not shown that the information he seeks will be relevant to those claims.

**PLAINTIFF'S MOTION FOR LIBRARY ACCESS OR TO APPOINT COUNSEL**

Plaintiff has filed a motion for an order to allow him access to the law library at RJDCF, or to appoint counsel to represent him. ECF No. 161. He filed this motion about a month after his return to RJDCF from CSP. Apparently, he cannot – or could not[4] – access the actual law library because he is – or was – housed in administrative segregation in "Building 7" at RJDCF which "does not have a proper law library." *Id.* at 1. He states that he also does not have a state-

[4] As noted earlier, plaintiff has been moved in and out of restrictive housing (also known as administrative segregation) at RJDCF.

issued tablet through which he might access law library materials, and he has not received a response to his requests to access the law library. *Id*. Defendants have not responded to this motion.

Plaintiff filed four pleadings after he filed this motion. ECF No. 163; ECF No. 164; ECF No. 165; ECF No. 167. This appears to indicate that he may have received a tablet and/or access to the law library.[5] But because defendants have not responded to this motion, the court will order them to respond and state whether and how plaintiff has physical and/or electronic access to the law library in his current housing and/or while housed in administrative segregation.

The record does not currently show exceptional circumstances as is required to appoint counsel. Thus far, plaintiff has competently prosecuted his claims, which are not unusually complex. Although a lawyer is helpful to any litigant, a plaintiff seeking appointment of counsel "must show that because of the complexity of the claims he was unable to articulate his positions." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *aff'd en banc in relevant part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998). "The resources available to the court to appiont counsel to represent prisoners proceeding pro se are very limited." *Parker v. Lynch*, No. 2:23-cv-0754 DC CSK P, 2025 WL 2338222, at *2, 2025 U.S. Dist. LEXIS 156901, at *5 (E.D. Cal. Aug. 12, 2025). Because plaintiff has not shown that he is unable to articulate his positions in this litigation, he has not demonstrated exceptional circumstances. For these reasons, the court will deny plaintiff's motion.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A. Summary Judgment Standard Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

////

////

[5] Plaintiff filed his detailed and lengthy response to defendants' dispositive motion for summary judgment months earlier, indicating that he had adequate access at that time. *See* ECF No. 148.

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv.,*

*Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

B. Defendants' Motion Argues That Plaintiff Failed to Exhaust Grievance Remedies

Defendants move for summary judgment on the grounds that plaintiff has not exhausted available grievance remedies. ECF No. 141. They submit a log identifying 34 non-healthcare grievances plaintiff submitted "that would potentially be related to the claims of his complaint between April 2021 and April 2022." ECF No. 141-4 at ¶ 7; ECF No. 141-7. They also submit copies of the 20 (out of 34) non-healthcare grievances that plaintiff appealed to a higher level. ECF No. 141-4 at ¶¶ 3, 7-9; ECF No. 141-5; ECF No. 141-6.

////

Plaintiff argues that his grievances exhausted claims against most of the defendants. ECF No. 148. He submits copies of some of the same grievances as well as records of additional grievances[6] which he argues establish that he exhausted available administrative remedies.

C. Grievance Exhaustion Requirements

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).

The PLRA applies to all suits about prison life, *Porter*, 534 U.S. at 532, and a prisoner is required to exhaust those remedies which are available. *See Booth v. Chumer*, 532 U.S. 731, 736 (2001). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter*, 534 U.S. at 524-25 (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"). The requirements of a particular prison, and not the PLRA, "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Dismissal for failure to exhaust should generally be brought and determined by way of a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Under this rubric, defendant bears the burden of demonstrating that administrative

---

[6] Defendants also maintain that plaintiff did not produce any documents showing grievance exhaustion in response to their discovery requests. ECF No. 141-1 (declaration of Ryan Gille); ECF No. 141-2 (exhibits); ECF No. 141-3 (exhibits).

remedies were available, and that the plaintiff did not exhaust those remedies. *Id.* at 1172. If defendant carries this burden, then plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* If the undisputed evidence, construed in the light most favorable to plaintiff, demonstrates that plaintiff did not exhaust the available administrative remedies, then defendant is entitled to summary judgment. *Id.* at 1166.

During the relevant time period, California's regulation on preparation and submittal of prisoner grievances required that a grievance "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), ..., to the best of the claimant's knowledge[.]" Cal. Code Regs. tit. 15, § 3482(c)(2) (repealed effective December 21, 2024).[7] Courts have noted that where a grievance does not identify a staff person by name, "there must be a 'sufficient connection' between the claim in the grievance" and the person subsequently sued as a defendant "such that prison officials can be said to have had 'notice of the alleged deprivation' and an 'opportunity to resolve it.'" *Ford v. Fiori*, No. 1:23-cv-1602-KES-SAB, 2025 WL 1787401, at *6 (E.D. Cal. June 27, 2025) (quoting *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016)); *see also Duncan v. Campbell*, No. 1:24-cv-0970-HBK, 2026 WL 1959364, at *5-6 (E.D. Cal. July 7, 2026) (grievance that did not name defendants and did not describe their alleged actions, did not exhaust administrative remedies for alleged First Amendment retaliation claim); *Strickland v, Jenkins*, No. 2:22-cv-0898-DB, 2023 WL 4827944, at *4 (E.D. Cal. July 27, 2023) (grievance that did not indicate the involvement of a third correctional officer did not alert prison officials to a potential problem with respect to the third officer).

////

////

////

[7] The current regulation, effective January 22, 2026, requires the prisoner to "describe all information known and available [] regarding the claim, including key dates and times, names and titles of all involved departmental staff (or a description of those staff), [], to the best of the claimant's knowledge." 15 Cal. Code Regs. § 3482(c)(1).

D. Analysis

The parties have submitted voluminous grievance records. Defendants assert that in most instances plaintiff's grievances did not exhaust his administrative remedies because they do not identify the defendants in question by name or describe any specific action taken by them. Plaintiff's argument is essentially that the person is implicitly identified by the context of the grievance. The court here examines only the grievances that plaintiff relies upon to dispute defendants' motion and/or that are otherwise relevant to the exhaustion analysis.[8] *See* ECF No. 148.

Defendants concede in their reply that "it appears there is a triable issue as to whether Plaintiff exhausted administrative remedies" as to defendant **Oakes**. ECF No. 150 at 2 n.1. For this reason, summary judgment must be denied as to plaintiff's claim against Oakes.

Plaintiff does not submit any evidence attempting to refute defendants' non-exhaustion arguments as to claims against defendants **Gomez** or **Hall**. *See generally* ECF No. 141; ECF No. 148. This is sufficient reason to enter summary judgment as to plaintiff's claims against Gomez and Hall.

Plaintiff does present exhaustion arguments regarding the remaining defendants.[9] According to the analysis below, plaintiff has plausibly shown he exhausted one or more grievances as to his claims against defendants **Peery**, **Soto**, and **Trenda**, but he has not plausibly shown exhaustion of administrative remedies as to his claims against remaining defendants

---

[8] The court accordingly does not discuss defendants' submissions regarding Grievance No. 122509 (ECF No. 141-5 at 38-47); Grievance No. 148848 (ECF No. 141-5 at 84-86); Grievance No. 149944 (ECF No. 141-5 at 87-129); Grievance No. 155573 (ECF No. 141-5 at 130-132); Grievance No. 173461 (ECF No. 141-5 at 133-139); Grievance No. 180089 (ECF No. 141-5 at 140-144); Grievance No. 192869 (ECF No. 141-5 at 170-181); Grievance No. 243260 (ECF No. 141-6 at 87-101); Grievance No. 249268 (ECF No. 141-6 at 102-117); or Grievance No. 223219 (ECF No. 141-6 at 118-122).

[9] Plaintiff argues that he exhausted grievances against two people who are not defendants in this lawsuit (Beltran and St. Andre). But these individuals were not identified as defendants in the FAC and no claims against them were screened in. ECF No. 18 at 4.

**Benavidez**,[10] **Castillanos**, **Deras**, **Gipson**, **Hicks**, **Johnson**, **Keibler**, or **Williams**.[11]

Grievance No. 95952 (ECF No. 141-6 at 123-148; ECF No. 148 at 50-58). Plaintiff argues this grievance exhausts claims against **Johnson**, **Soto**, **Trenda**, and **Williams**. ECF No. 148 at 50. This grievance does not mention any of these defendants and it does not describe any specific actions of any unnamed person who might be one of them. According to his grievance, plaintiff was apparently misidentified as an alleged suspect in a sexual assault incident. *Id*. at 44-45. The records of this grievance do not describe how the misidentification occurred, who was responsible, or even whether the person who misidentified plaintiff was a prison official or another prisoner. The first-level decision on the grievance states that un-named "staff were informed of a PREA [Prison Rape Elimination Act] incident on February 22, 2021, identifying the Claimant [i.e., plaintiff] as an alleged suspect." *Id*. at 48. Plaintiff apparently became aware of the accusation when prison officials named Rhodes and Beltran (neither of whom are defendants) separately served him with documents informing him of the charge. *Id*. He apparently reported the misidentification, and the accusation was investigated and in plaintiff's own words it "was deemed not reliable." *Id*. at 45. According to plaintiff's account, the investigation occurred on February 28, 2021, three weeks before he initiated his grievance on

[10] The court identifies defendants as their names are spelled on the docket, even though the record contains many instances where a person's name is spelled differently. For example, defendant Benavidez is frequently referred to as "Benavides" in the record and defendant Castillanos's name is sometimes spelled "Castellano."

[11] The court further notes that three of the defendants are wardens of their respective prisons. **Benavidez** is warden of CMF, **Johnson** is warden of CSP-LAC, and **Kiebler** is warden of HDSP. As will be shown in the following analysis, plaintiff's contested grievances do not describe any specific actions taken by any of them. His implicit arguments for exhaustion of his claims against them appear to be based on a theory of implied supervisory liability – i.e., that they are necessarily implicated as being responsible for what happened at their respective prisons.

Plaintiff's implicit argument fails because "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) ("A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." (citation omitted)). And just as a supervisor (warden) cannot be held liable without evidence of direct participation in a constitutional violation, so too grievance exhaustion cannot be established without evidence that the grievance in question explicitly exhausted a claim against the supervisor (warden).

March 21, 2021. *Id*.; ECF No. 141-6 at 175. Plaintiff was advised on March 25, 2021 that arrangements had been made to correct plaintiff's classification records at his next classification review. ECF No. 148 at 48.

Plaintiff's grievance complained that the misidentification placed him at risk of attack. *Id*. at 45. The grievance was disapproved at the first level of review, apparently because the corrective action that plaintiff himself described had already been taken. *Id*. at 48-49. Plaintiff's appeal of the grievance decision was not answered timely within the sixty days allowed, which meant that the first level decision became final.[12] ECF No. 141-6 at 123.

Plaintiff exhausted this grievance, but it does not plausibly show exhaustion as to his claims against Johnson, Soto, Trenda, or Williams because: 1) it does not identify any of them by name, and 2) it does not plausibly put prison officials on notice that any unnamed person who might be Johnson, Soto, Trenda, or Williams was responsible for misidentifying plaintiff as the perpetrator of a PREA assault.

<u>Grievance No. 101307 (ECF No. 141-6 at 149-175; ECF No. 148 at 41-49)</u>. Plaintiff argues this grievance exhausts claims against **Castillanos**, **Deras**, **Johnson**, **Soto**, **Trenda**, and **Williams**. ECF No. 148 at 41. This grievance appears to be substantively duplicative of Grievance No. 95952, discussed above. *See* ECF No. 141-6 at 149-175; *compare* ECF No. 141-6 at 123; ECF No. 148 at 123-130. It references the same misidentification of plaintiff as the perpetrator of a PREA incident, the same February 28, 2021 investigation, and the same corrective measures. It also does not name any individual defendant and does not describe any specific actions of any unnamed person who might potentially be one of these defendants. It was disapproved at the first level of review and plaintiff's appeal was not answered timely meaning that the first level decision became final. This grievance does not plausibly establish exhaustion

[12] An appeal that is denied because it was not addressed within the 60 days required for substantive response means that the first level decision is made final. *Rivas v. Koenig*, No. 24-cv-0007-JST, 2024 WL 4894295, at *2 (N.D. Cal. Nov. 25, 2024) (citing 15 Cal. Code Regs. § 3485(g)(10)); *see also Brannon v. Covarrubias*, No. 22-16728, 2024 WL 1253788, at *2 (9th Cir. Mar. 25, 2024) (an appeal marked as "time expired" did not cure untimeliness of underlying grievance and so did not necessarily establish grievance exhaustion).

of any claim against any defendant, for the same reasons that Grievance No. 95952 does not plausibly establish exhaustion.

Grievance No. 111519 (ECF No. 148 at 123-130).[13] Plaintiff argues this grievance exhausts claims against **Benavidez** and **Trenda**. ECF No. 148 at 123, 125. This grievance does identify Trenda by name and makes a specific complaint about his actions, but it does not mention Benavidez or describe any specific actions of any unnamed person who might be Benavidez. According to his grievance, plaintiff was put in "substantial imminent danger" because of "undocumented enemy concerns." ECF No. 148 at 127. He "sent several requests to the counselors to document [his] concerns and are still not document[ed]." *Id*. at 129. And specifically, "Trenda is trying to release me to D-yard on 4-29-21." *Id*. At the first level of review prison officials responded that plaintiff's "allegations of his concerns being ignored by CC II Trenda are unfounded." ECF No. 148 at 126. Time expired on plaintiff's appeal. ECF No. 148 at 122. This grievance was exhausted and plausibly shows exhaustion of administrative remedies as to plaintiff's deliberate indifference claim against Trenda, but not as to Benavidez.

Grievance No.114430 (ECF No. 141-5 at 2-22; ECF No. 148 at 59-65). Plaintiff argues this grievance exhausts claims against **Castillanos**, **Deras**, **Johnson**, **Soto**, **Trenda**, and **Williams**. ECF No. 148 at 59, 131. This grievance does not mention any of these defendants and it does not describe any specific actions of any unnamed person who might be one of them. According to his grievance which he submitted on May 2, 2021, plaintiff appeared for a classification review on April 28, 2021 and was approved for transfer to MCSP where he claimed to have an undocumented enemy. ECF No. 141-5 at 6, 8. This grievance was denied at the first level of review and then time expired for response to plaintiff's appeal. *Id*. at 2, 24. This grievance does not plausibly establish exhaustion as to any claim against any defendant because nothing in the record of this grievance shows that any of the defendants was identified or investigated as a subject of the grievance, but as discussed below plaintiff appealed the same issue in his Grievance No. 119030, which does plausibly demonstrate exhaustion as to defendant

[13] Defendants included Grievance No. 111519 in their list of potentially relevant grievances, but they did not submit any records pertaining to the grievance. *See* ECF No. 141-7.

Trenda.

<u>Grievance No. 119030 (ECF No. 141-5 at 23-37; ECF No. 66-73)</u>. Plaintiff argues this grievance exhausts his claim against **Trenda**. ECF No. 148 at 66. This grievance appears substantively similar to Grievance No. 114430. *See* ECF No. 141-5 at 23-37. According to this grievance which he submitted on May 13, 2021, plaintiff appeared for a classification review on April 28, 2021 and was approved for transfer to MCSP despite his claims of an undocumented enemy there. ECF No. 148 at 132. Plaintiff's grievance does not identify any of the defendants by name but prison officials were apparently able to identify staff who had been involved in the transfer decision and as part of their response to this grievance they interviewed defendant Trenda as well as non-defendants Doty and Sierra. ECF No. 141-5 at 26. This grievance was denied at the first level and was exhausted at the appeal level of review. *Id*. at 23-27. Because his grievance was sufficiently specific to permit prison officials to identify Trenda, it plausibly establishes exhaustion as to defendant Trenda, but not as to any other defendant.

<u>Grievance No. 122672 (ECF No. 141-5 at 63-77; ECF No. 26-32)</u>. Plaintiff argues this grievance exhausts claims against **Deras, Castillanos, Johnson**, **Soto**, and **Trenda**. ECF No. 148 at 25, 74. Plaintiff submitted this grievance on May 26, 2021. ECF No. 141-5 at 67. It concerns the same anticipated transfer to MSCP which was the subject of Grievance Nos. 114430 and 119030, discussed above. *Id*. It also does not name or describe any specific actions of any individual defendant.[14] It was rejected as duplicative of Grievance No. 119030, and time for response to plaintiff's appeal expired. ECF No. 141-5 at 66, 63. This grievance does not plausibly and independently establish exhaustion as to any claim against any defendant.

<u>Grievance No. 123811 (ECF No. 141-5 at 48-62; ECF No. 148 at 33-40)</u>. Plaintiff argues this grievance exhausts claims against **Johnson**, **Soto**, **Trenda**, and **Williams**. ECF No. 148 at 33. This is another grievance about the anticipated transfer to MCSP, which also does not name or describe any specific actions of any defendant. ECF No. 141-5 at 48-62. The grievance itself was exhausted, *id*. at 48, but it does not plausibly and independently establish exhaustion of any

[14] Plaintiff does identify "Beltran" in his appeal of this grievance, but as already noted Beltran is not a defendant. See ECF No. 141-5 at 65.

claim against any defendant.

Grievance No. 138722 (ECF No. 141-5 at 78-83). The only records of this grievance were submitted by defendants. The grievance names defendant **Soto** and complains that Soto refused to speak with plaintiff in a confidential setting where other inmates could not hear. ECF No. 141-5 at 82. The grievance was denied at the first level of review. *Id*. at 78. It is on defendants' list of grievances that plaintiff at least attempted to appeal. ECF No. 141-7. But the records submitted by defendants do not include the outcome of the appeal or show whether the appeal established exhaustion of the grievance, and plaintiff does not include any documentation related to this grievance in his response. At minimum, defendants have failed to carry their burden to show that plaintiff did not exhaust a relevant grievance against Soto. It plausibly appears that this grievance may have exhausted plaintiff's administrative remedies as to his claim against Soto.

Grievance No. 189333 (ECF No. 141-5 at 145-164; ECF No. 148 at 88-95). Plaintiff argues this grievance shows that his concerns were ignored "by STG" but he does not make any specific argument as to exhaustion of a claim against any individual defendant. ECF No. 148 at 88. He complained in this grievance that he was assaulted by his cellmate on November 14, 2021, and that his enemies were not properly documented in his file. ECF No. 141-5 at 146-147, 150, 152. This grievance does not mention any of the defendants and it does not describe any specific actions of any unnamed person who might be one of them. *Id*. There is no indication that prison officials identified or investigated the actions of any individual defendant or any other specific person. At the first level of response, plaintiff's enemy concerns were found to be unverifiable, speculative, and lacking substantiation. *Id*. at 148. Time for response to plaintiff's appeal expired. *Id*. at 145. This grievance was exhausted, but it does not plausibly establish exhaustion as to any claim against any defendant.

Grievance No. 193813 (ECF No. 141-5 at 170-181; ECF No. 148 at 96-103, 158). The parties agree that this grievance specifically describes specific actions of defendant **Oakes** and is apparently the reason Oakes has conceded exhaustion as to the claim against him. ECF No. 150

at 2 n.1.[15] Plaintiff complained that he reported to Oakes "and his [un-named] partner" that plaintiff was not compatible with his cellmate. Oakes allowed plaintiff to wait at the program office while a bed move was approved but apparently the cellmate followed plaintiff to the program office and threatened plaintiff there and a fight ensued. *See* ECF No. 141-5 at 173-174; ECF No. 148 at 99-100. Less explicitly, the grievance appears to imply that Oakes had been responsible for housing plaintiff with the incompatible cellmate. It appears that this grievance was investigated and was ultimately not sustained, and plaintiff's appeal was rejected. ECF No. 141-5 at 177, 170; ECF No. 148 at 158. As defendants have conceded, this grievance plausibly establishes administrative exhaustion of the claim against Oakes.

Grievance No. 200380 (Grievance No. 148 at 118-122).[16] Plaintiff argues this grievance exhausts claims against **Kiebler** and **Oakes**. ECF No. 148 at 118-122. This grievance is about the same incident that was the subject of Grievance No. 193813. It names and describes the same actions of defendant Oakes. It more explicitly states that plaintiff had complained to Oakes about the cellmate's incompatibility. This record does not include the first-level response to this grievance, but it does show that time expired for response to plaintiff's grievance appeal. ECF No. 148 at 118. At most, this grievance confirms plausible exhaustion as to plaintiff's claim against Oakes, which defendants have already conceded. But the grievance does not mention Kiebler, does not describe any specific actions taken by Kiebler, and does not serve to show plausible exhaustion of any claim against Kiebler.

Grievance No. 203077 (ECF No. 141-6 at 24-33; ECF No. 148 at 104-110). This grievance again references the same events as Grievance No. 193813 and Grievance No. 200380, but it complains that, as a consequence of those events, plaintiff received a misconduct report because he apparently used a "manufactured weapon" in the fight with his cellmate. *See* ECF No.

[15] Plaintiff's Exhibit U (ECF No. 148 at 158) that is mentioned in defendants' response (ECF No. 150 at 4), is not a separate grievance. Plaintiff's Exhibit U is merely additional documentation of Grievance No. 193813, which is more fully documented at ECF No. 141-5 at 170-181.

[16] Grievance No. 200380 does not appear on defendants' list of potentially relevant grievances. ECF No. 141-7.

148 at 109. Plaintiff argues this grievance exhausts his claim against **Oakes** and **Peery**. *Id*. at 105. The grievance does mention both Oakes and Peery. *Id*. at 105, 106. Implicitly, it appears Peery may have been involved in making the misconduct report and/or determining there were no mitigating factors. This grievance was denied at the first level of review and time expired before response was given to plaintiff's appeal. *Id*. at 104, 109. Defendants have already conceded exhaustion as to Oakes. This grievance also plausibly establishes exhaustion as to the claim against Peery.

<u>Grievance No. 213892 (ECF No. 141-6 at 24-33; ECF No. 148 at 82-87)</u>. Plaintiff argues this grievance exhausts his claim against **Hicks** who "ignored all my requests for help, ignored the hit on me by S.T.G.s, knew their [sic] was no policy for any drop-outs" and he also argues it exhausts his claim against **Kiebler**.[17] ECF No. 148 at 82. His grievance does name Hicks and describes his issue with her which was that she "does not respond" to his requests for copies of "important papers from my C-file" and that for two months she ignored his requests to speak with him about his enemy concerns. ECF No. 148 at 84. The grievance does not identify Kiebler by name or describe any specific actions of any unnamed person who might be Kiebler. *Id.*

But plaintiff has not shown that he exhausted this grievance. His appeal of the first level decision was rejected as untimely because the deadline for submission was April 1, 2022 but plaintiff did not submit the appeal until April 4, 2022. ECF No. 141-6 at 24; ECF No. 148 at 81. For this reason, plaintiff has not met his burden to show that this grievance plausibly exhausted any claim against either Hicks or Kiebler.

<u>Grievance No. 234405 (ECF No. 141-6 at 34-56; ECF No. 148 at 20-24, 150-156)</u>. Plaintiff argues this grievance exhausts his claim against **Benavidez**. ECF No. 148 at 20, 150. This grievance complained that a prison official named "Wong" failed to respond to plaintiff's requests for help and failed to document his concerns about enemies. ECF No. 141-6 at 36. Wong is not a defendant in this lawsuit, and this grievance does not mention Benavidez or describe any specific actions of any unnamed person who might potentially be Benavidez. *Id*. at

[17] Plaintiff also argues the grievance establishes exhaustion as to "St. Andre." ECF No. 148 at 82. But as noted earlier, St. Andre is not a defendant.

36-37. The first level response to this grievance was that Wong had met with plaintiff and documented his concerns. *Id*. at 38. Prison officials clearly were not alerted to the involvement of any staff other than Wong. Plaintiff appealed and exhausted this grievance, *id*. at 34-35, but this grievance does not plausibly establish exhaustion of any claim against Benavidez.

Grievance No. 235798 (ECF No. 141-6 at 57-72; ECF No. 148 at 141-149). Plaintiff argues this grievance exhausts claims against **Benavidez** and **Oakes**. ECF No. 148 at 141. This grievance was exhausted. ECF No. 141-6 at 58. This grievance again references the fight which was the subject of Grievance No. 193813, Grievance No. 200380, and Grievance No. 203077. Plaintiff complained that he was inappropriately issued a rules violation report for striking the other inmate with his cane. *Id*. at 57. This grievance mentions Oakes in passing, as someone who could have confirmed that plaintiff used the cane in self-defense. *Id*. at 60. It does not mention Benavidez. The most generous reading of this record is that this grievance infers error on the part of **Peery** (who was identified in Grievance No. 203077 as the author of the misconduct report, and who could otherwise be identifiable as the author). For this reason, the court finds that this grievance plausibly supports plaintiff's argument that he exhausted administrative remedies as to his claim against Peery, but it does not independently plausibly show exhaustion of claims against Benavidez or Oakes.

Grievance No. 241224 (ECF No. 141-6 at 73-86; ECF No. 148 at 136-140). Plaintiff inexplicably argues this grievance exhausts his claim against **Benavidez**. ECF No. 148 at 136. The only prison official named in this grievance is "Wong," who is not a defendant in this lawsuit. *Id*. at 137-138. Wong apparently met with plaintiff at CMF and told plaintiff that he could not investigate plaintiff's claims about events at his former facility, HDSP. *Id*. at 137. Plaintiff exhausted this grievance. *Id*. at 136; *see also* ECF No. 141-6 at 73-86 (defendants' documentation of this grievance). But the grievance does not plausibly serve to exhaust any claim against Benavidez.

////

////

////

<u>Grievance No. 268029 (ECF No. 148 at 115-117)</u>.[18] Plaintiff argues this grievance exhausts his claim against **Benavidez**. ECF No. 148 at 115-117. Plaintiff exhausted the grievance as of August 29, 2022, which was four months after he filed this lawsuit on April 29, 2022 and only a few weeks before he filed his FAC on September 14, 2022. *Id*. at 115. But regardless of whether the grievance establishes timely exhaustion, it does not mention Benavidez or describe any specific actions of any unnamed person who might be Benavidez. It instead complains that someone named "CC2 Shahiby" failed to document plaintiff's concerns and/or failed to recommend a transfer for plaintiff. *Id*. at 116, 117. This grievance therefore does not plausibly exhaust any claim against Benevidez.

<u>Grievance No. 299046 (ECF No. 148 at 111-114)</u>.[19] Plaintiff argues this grievance exhausts his claim against **Benavidez** and **Gipson**. ECF No. 148 at 111. According to documentation submitted by plaintiff, he initiated this grievance in about August 2022. ECF No. 148 at 114. It was denied at the first level on October 11, 2022, and his appeal establishing exhaustion was denied as of December 21, 2022. *Id*. at 111, 112. The grievance was clearly not exhausted before plaintiff filed this lawsuit (April 29, 2022), nor as of the date plaintiff filed his FAC (September 14, 2022). ECF No. 1; ECF No. 16. By grieving his issue after filing his lawsuit, he effectively deprived prison authorities of the opportunity for investigation and remediation, which is the very purpose of requiring administrative exhaustion. *See Brown v. Valoff*, 422 F.3d 926, 934-935 (9th Cir. 2005). For this reason, this grievance does not establish administrative exhaustion. *Id*. at 942-943 (prisoner who filed complaint before completion of staff misconduct investigation did not exhaust available administrative remedies).

The grievance also does not identify defendants Benavidez or Gipson by name nor does it clearly state an issue regarding their promulgation of an allegedly unsatisfactory policy. ECF No. 148 at 111-114. Plaintiff has not plausibly shown exhaustion of any claim through this grievance.

---

[18] Grievance No. 268029 does not appear on defendants' list of potentially relevant grievances. ECF No. 141-7.

[19] Grievance No. 299046 does not appear on defendants' list of potentially relevant grievances. ECF No. 141-7.

**PLAINTIFF'S REQUEST TO FILE A SUR-REPLY**

Plaintiff has requested permission to file a sur-reply providing further response to defendants' motion for summary judgment. ECF No. 153. He did not attach any proposed sur-reply, but he states that it would "include[] new facts not mentioned in plaintiff's response." *Id.* at 1. He makes a conclusory claim that the sur-reply would show that he exhausted all available remedies and show that he "fully exhausted under the continuing violations doctrine." *Id.* Defendants have not responded to plaintiff's request.

Parties may not file sur-replies as of right and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). After a reply is filed, the only additional materials that may be filed without prior Court approval are objections to reply evidence and notices of supplemental authority. Local Rule 230(m). Plaintiff does not claim that his proposed sur-reply is based on either of those exceptions. It is within the court's discretion to either permit or preclude any other sur-reply. *See U.S. ex rel. Meyer v. Horizon Health Corp.,* 565 F.3d 1195, 1203 (9th Cir.2009) (district court did not abuse discretion in refusing to permit "inequitable sur-reply"); *JG v. Douglas County School Dist.,* 552 F.3d 786, 803 n. 14 (9th Cir.2008) (district court did not abuse its discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

Defendants filed at least 356 pages of grievance records with their motion for summary judgment. ECF No. 141-5; ECF No. 141-6. Plaintiff's response was 202 pages and it included his own copies of grievance records, some of which had not been submitted by defendants. ECF No. 148. Defendants did not submit any new evidence with their 7-page reply. ECF No. 150. And defendants' counsel declares that plaintiff did not produce any grievance records in response to discovery requests. ECF No. 141-1.

Plaintiff has had ample opportunity to develop the record and he has succeeded in showing plausible grievance exhaustion as to four of the defendants.[20] Any assertion of "new

---

[20] Plaintiff requested and received a 30 day extension of time to file his response to the motion for summary judgment. ECF No. 146; ECF No. 147.

facts" that he did not produce in response to discovery requests or in his response to the summary judgment motion would be unduly disruptive to the orderly adjudication of his claims and prejudicial to defendants. He has not shown any compelling reason to allow him to make any additional legal arguments, as implied by his reference to "the continuing violations doctrine." For these reasons, the undersigned will deny plaintiff's request to file a sur-reply.

**CONCLUSION**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's renewed motions for a protective order and for use of a pseudonym, ECF No. 143, ECF No. 154, and ECF No. 160, are DENIED.

2. Plaintiff's requests for a protective order, in ECF No. 143 and ECF No. 163, are DENIED.

3. Plaintiff's requests for subpoenas, ECF No. 158, 159, and 167, are DENIED.

4. Plaintiff's motion for library access or to appoint counsel, ECF No. 161, is DENIED in part as follows:

   a. Plaintiff's request to appoint counsel is DENIED; and

   b. Defendants must file a responsive pleading no later than seven days from the date of this order addressing plaintiff's claim that he does not have a CDCR-issued tablet to allow him to access the law library and does not otherwise have access to a law library.

5. Plaintiff's request to file a sur-reply in opposition to defendants' motion for summary judgment, ECF No. 153, is DENIED.

It is hereby RECOMMENDED that:

1. Plaintiff's motion for a temporary restraining order regarding prospective housing transfers and/or assignments (ECF No. 143) be DENIED.

2. Defendant's motion for summary judgment, ECF No. 141, be GRANTED IN PART and DENIED IN PART, as follows:

   a. That the motion be DENIED as to plaintiff's claims against defendants Oakes, Peery, Soto, and Trenda.

b. That the motion be GRANTED as to plaintiff's claims against defendants Benavidez, Castillanos, Deras, Gipson, Gomez, Hall, Hicks, Johnson, Keibler, and Williams.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95 F.2d 1153 (9th Cir. 1991).

DATED: September 2, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE